WILSON v. LAND.

Opinion delivered November 10, 1924.

1. ELECTIONS—RIGHT TO CONTEST PRIMARY ELECTION.—The right to contest a primary election is purely statutory, and the Legislature may confer it upon such terms as it sees fit.

2. ELECTIONS—TIME FOR CONTESTING NOMINATION.—Under Crawford & Moses' Dig., § 3772, a candidate's contest of a nomination, filed more than 10 days after the county central committee had canvassed and tabulated the votes and determined the nominee, but within 10 days after vote was certified, *held* too late.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; affirmed.

### STATEMENT OF FACTS.

H. C. Wilson instituted this action in the circuit court against Mrs. L. K. Land to contest her right to the nomination for the office of county treasurer at the primary election held by the Democratic Party on August 12, 1924.

Mrs. L. K. Land, H. C. Wilson and C. H. Moore were candidates for the nomination for county treasurer at the primary election held in Jefferson County, Arkansas, on Tuesday, August 12, 1924.

The members of the county central committee of Jefferson County met at noon on Friday, the 15th day of August, 1924, and canvassed the returns filed with said committee. The returns were canvassed, and a tabulation of them made by the county central committee on the same day. The tabulated returns show that in the race for county treasurer Mrs. L. K. Land received 2,232, H. C. Wilson 1,849, and C. H. Moore 997 votes. A certificate, signed by every member of the county central committee, was attached to the tabulation of the returns made by said committee on the 15th day of August, 1924. The tabulation shows the number of votes received by each candidate at said primary election. The nominees were ordered to be certified to the county convention which was to meet on August 18, 1924, and the county central committee adjourned at six o'clock on the evening of the 15th of August, 1924, except to meet again for the purpose of recounting the votes cast for chancellor.

On the 18th day of August, 1924, the Democratic Central Committee again met to take action, except in the chancellor's race. On the same day the Democratic county convention was held, and a certificate of nomination for the office of county treasurer was given to Mrs. L. K. Land, duly signed by the chairman and secretary of the said Democratic convention. At a later date a certificate of nomination, bearing the date of August

15, 1924, was given to Mrs. Land, signed by the chairman and secretary of the Democratic Central Committee.

H. C. Wilson filed his complaint contesting the nomination on the 26th day of August, 1924. His complaint was accompanied by the affidavits of ten reputable citizens who are members of the Democratic Party.

Mrs. Land made a motion to dismiss the complaint because it was not filed within ten days, as prescribed by the statute. The court sustained the motion to dismiss, and, from the judgment rendered dismissing his complaint, H. C. Wilson has duly prosecuted an appeal to this court.

*W. B. Sorrels* and *Coy Nixon,* for appellant.

As long as the returns were with the committee, subject to such corrections, additions, modifications or changes which the committee might make, on Monday the 18th, and which, under the law, they had the right to make, the contestant was not bound to institute proceedings. For definition of "results" see 142 Ark. 244; Century Dict. Crawford & Moses' Digest, § 3768, declares that the Central Committee "shall certify the *results* not later than Monday following the primary." See *Id.* §§ 3770, 3813. If the nomination of a candidate may be certified before the returns and ballots of absentee voters are in, C. & M. Digest, § 3813, and before the time expires to get in their votes and have them counted, then their right to vote is cut off, and they are denied their right of franchise. 36 Cal. 430, 87 Pac. 544; *Jones v. Smith,* 165 Ark. 425.

*Caldwell & Ross,* and *Rowell & Alexander,* for appellee.

The complaint and supporting affidavits were not filed within ten days after the 15th day of August, the day the central committee made the certification of the votes, and it was therefore too late. 136 Ark. 217, 221. On the contention that the central committee had no authority to issue the certificate on August 15, see C. & M. Digest, §§ 3767, 3768; 160 Ark. 269; 145 Ark. 431; *Id.* 371. There is no showing that the votes of absentee

voters were not counted, or that the result would have been different, if counted. The contestant must show that he is the nominee instead of the other party, and, unless he so states in his complaint, he fails to state a cause of action. *Story* v. *Looney,* 165 Ark. 455; *Hill* v. *Williams,* 165 Ark. 421. As supporting the trial court's findings and judgment in this case, see initiative act No. 1, Acts 1917, p. 2287, known as the Brundidge Primary Law, §§ 11 and 12; 1 R. C. L., 340; 14 Ark. 427; 136 Ark. 217.

HART, J., (after stating the facts). This court has held that the filing of a complaint supported by the affidavits of ten reputable citizens, who are members of the party holding the primary election, within the time prescribed by the statute, is a jurisdictional prerequisite, and that, if it is not filed within the statutory time, the circuit court has no jurisdiction to hear or determine the contest. *Logan* v. *Russell,* 136 Ark. 217, and *McLain* v. *Fish,* 159 Ark. 199.

Counsel for the contestant, however, contends that the ten days required by the statute within which to file the complaint did not begin to run until the certificate of nomination was given Mrs. Land by the Democratic county convention, on the 18th day of August, 1924, or, in any event, that it did not begin to run until Saturday at noon, the 16th day of August, 1924.

The right to contest is given by § 3772 of Crawford & Moses' Digest. The section provides that a right of action is hereby conferred on any candidate to contest the certification of nomination or certification of vote as made by the county central committee.

It provides further that the complaint shall be supported by the affidavits of at least ten reputable citizens, and shall be filed within ten days of the certification complained of.

As we have already seen, the right to contest a primary election is purely statutory, and the Legislature may confer it upon such terms as it sees fit. Thus it will be seen that a right of action is given any candi-

date to contest the certification of vote as made by the
county central committee. The statute is unambiguous
in this respect, and it was evidently the intention of the
Legislature to provide for a speedy hearing and deter-
mination of a contest.

In our opinion it was not necessary, under the stat-
ute, that contest proceedings should be delayed until a
certificate of nomination had been actually issued by
either the county convention or by the county central
committee. We think that, when the county central com-
mittee has canvassed and tabulated the votes, and it
is ascertained by this canvass and tabulation which candi-
date has received the greatest number of votes, the
opposing candidate may at once, and must within ten
days thereafter, begin his contest proceedings, although
no certificate of nomination has been issued.

It will be noted that the section referred to above
provides that the complaint shall be filed within ten
days of the certification complained of. This carries us
to a consideration of the provisions of §§ 3767-3769 of
Crawford & Moses' Digest.

Section 3767 provides that the county central com-
mittee shall convene at noon of the Friday following the
primary on Tuesday, and that the returns shall be deliv-
ered to said committee, as hereinbefore provided, on
or before said time.

Section 3768 provides that, if the returns and ballots
of any precinct are not then delivered, the committee
shall send for the same and immediately bring the same
to said committee. Continuing, it provides that, if all
returns and ballots are not before the committee by Fri-
day noon, it may adjourn until it receives them, not
later than Saturday noon. Then the section provides
that the committee shall canvass the returns, and, when
demanded, examine the ballots, may hear testimony, if
offered, of fraudulent practices and illegal votes, and
may cast out illegal votes, fraudulent returns, and find
the true and legal votes cast for each candidate, and shall
certify the result not later than Monday following the
primary.

Section 3769 provides that said committee shall certify the nomination of all county and township officers. Thus it will be seen that the county central committee is vested with quasi-judicial powers. It has the power to hear testimony, cast out illegal votes or fraudulent returns, and find the true and legal votes cast for each candidate. It is then made its duty to certify the result. When the county central committee has canvassed and tabulated the votes and ascertained who has received a majority of the votes, its duties, except to issue a certification of nomination, are at an end, and it must award a certificate of nomination to the candidate who, by its canvass and tabulation, has received a majority of votes.

Section 3768 provides that the county central committee shall find the true and legal votes cast for each candidate, and shall certify the result. This means that it shall certify its decision of the number of votes received by each candidate. When the canvass and tabulation show that a particular candidate has received the highest number of votes cast for the office, he is then entitled, as a matter of right, to a certificate of nomination.

It is true that the certificate of nomination is evidence of title to the nomination, and should be given the successful candidate, yet the actual issuance of the certificate is not a prerequisite to the commencement of a contest. The right to contest grows out of the fact that one candidate has received, on the face of the returns made by the county central committee, a majority of the votes, and this gives him the rights of a regular nominee until he is deprived of them by a successful contest against him.

It is true that, under the statute, the county central committee might have adjourned until Saturday noon to complete its canvas and certify the results thereof. But our statute regulating primary elections does not provide that contest proceedings shall not be started until after a certificate of nomination has been issued. On the other hand, it provides that the complaint shall be

filed within ten days of the certification complained of; and that certification, we think, is the one made by the county central committee finding the number of legal votes cast for each candidate and certifying that result. In short, the intent of the statute is that the contest shall be commenced within ten days from the time the county central committee finishes canvassing and tabulating the returns and ascertaining the result thereof. This was done by the county central committee in the case of all the races, except that for chancellor, before the county central committee adjourned on Friday.

The views we have expressed are strengthened by the holding in *McLain* v. *Fish,* 159 Ark. 199. It was there held that the requirements of the statute as to the time of completing the canvass of a primary election and the issuance of a certificate of a nomination are directory.

In the case before us the county central committee finished canvassing and tabulating the votes on Friday, the 15th day of August, 1924, in so far as all of the offices were concerned, except that of chancellor, and this finding included the office of county treasurer. The tabulation made by the committee showed that Mrs. Land received the highest number of votes cast for treasurer, and the result was so certified by the committee on the same day. Wilson did not file his contest within ten days thereafter, and the court was right in dismissing his complaint.

The judgment will therefore be affirmed.