# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1101

_____

Robert M. Cearley, Jr., as Personal Representative of the Estate of Mr. Vernon
Leslie Holland, decedent, and on behalf of the Wrongful Death Beneficiaries,

*Plaintiff - Appellant,*

v.

Bobst Group North America Inc.,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: September 24, 2024
Filed: February 21, 2025

_____

Before COLLOTON, Chief Judge, LOKEN and KOBES, Circuit Judges.

_____

COLLOTON, Chief Judge.

Vernon Holland was fatally injured by a piece of industrial equipment at the
factory where he worked. Robert Cearley, Jr., as personal representative of Holland's
estate, brought a wrongful death suit against the company that delivered and installed
the piece of equipment, Bobst Group North America, Inc. ("Bobst NA"), seeking

damages on several tort claims. The district court[*] granted summary judgment for Bobst NA, ruling that Arkansas's statute of repose on construction or design barred Holland's claim. Cearley appeals, and we affirm.

I.

Bryce Corporation operates a manufacturing plant in Searcy, Arkansas. The company uses this facility to make flexible packaging, such as potato chip bags and zip pouches. As part of the production process, the Searcy plant operates an eighty-foot-long industrial lamination line with multiple machines.

The lamination line operates in the following manner. A roll of unlaminated material is placed on a spindle. The material is then unwound and fed through a series of machines that laminate the material. At the end of the lamination line, another machine rewinds the laminated material into a new roll. This last machine is a "rewinder."

In March and April 2010, technicians from Bobst NA participated in the delivery, installation, integration, and commissioning of a new rewinder on the Searcy plant's lamination line. An old rewinder was removed and replaced. Due to its large size, the new rewinder was transported to the Searcy plant in sections and assembled at the plant with the help of a forklift over ten days. The machine weighed ten tons once assembled and was affixed to the floor of the Searcy plant with metal ties. The rewinder's electrical and air pressure systems were connected to the plant's systems.

---

[*]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

The new machine was a Rotomec series 360 rewinder with select components and features that were specified by Bryce Corporation. The rewinder was designed and manufactured by an affiliate company, Bobst Italia, that is not a party to this action. Installation was guided by a technical manual prepared by Bobst Italia for the Rotomec 360 model. An employee of Bobst Italia was in charge of the commissioning process for the new equipment.

Bryce Corporation employees kept maintenance logs for the rewinder. A Bryce technician testified that "one of the main reasons" the company kept these logs was to calculate whether it was time "to buy a new machine and replace that one." The rewinder was serviced twice in 2011, and was still in use as of 2022.

Holland worked at the Searcy plant as a laminator helper. In November 2016, the material on the lamination line became miswound, and the production line was stopped. Holland opened the rewinder and entered the machine to fix the issue.

According to the machine's design plan, a worker could open the doors to enter the rewinder only if the spindle motors were stopped. But when Holland entered the rewinder, one of the two spindles was still turning. While pulling the miswound film from the stopped spindle, Holland backed into the turning spindle. He was pulled through the rewinder, incurred severe injuries, and later died in May 2017.

Cearley, on behalf of Holland's estate, sued Bobst NA and alleged several product liability claims. Bobst NA moved for summary judgment, arguing among other things that Cearley's claims were untimely and barred by an Arkansas statute of repose. The district court granted the motion on that basis.

We review the district court's judgment *de novo*. Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving

party presents no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## II.

Arkansas Code § 16-56-112(b)(1) is a statute of repose for claims arising from personal injury or wrongful death caused by alleged construction defects.  "The effect of the statute of repose 'is to cut off entirely an injured person's right of action before it accrues, when that action does not arise until after the statutory period has elapsed.'"  *Star City Sch. Dist. v. ACI Bldg. Sys., LLC*, 844 F.3d 1011, 1017 (8th Cir. 2017) (quoting *Curry v. Thornsberry*, 128 S.W.3d 438, 447 (Ark. 2003)).

The statute provides:

> No action in tort or contract, whether oral or written, sealed or unsealed, to recover damages for personal injury or wrongful death caused by any deficiency in the design, planning, supervision, or observation of construction or the construction and repairing of any improvement to real property shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or the construction and repair of the improvement more than four (4) years after substantial completion of the improvement.

Ark. Code Ann. § 16-56-112(b)(1).  The "legislative purpose" of § 16-56-112 "was to enact a comprehensive statute of limitations protecting persons engaged in the construction industry from being subject to litigation arising from work performed many years prior to the initiation of the lawsuit."  *Okla Homer Smith Furniture Mfg. Co. v. Larson and Wear, Inc.*, 646 S.W.2d 696, 698 (Ark. 1983).

The parties dispute whether Bobst NA enjoys protection under the statute of repose.  We conclude that claims against Bobst NA arising from its work installing

the rewinder are governed by the statute insofar as they involved an improvement to real property. Bobst NA technicians participated in the delivery, installation, integration, and commissioning of the rewinder on the Searcy plant's lamination line. The company was therefore involved in performing or furnishing the construction of the rewinder. *See 65th Ctr., Inc. v. Copeland*, 825 S.W.2d 574, 580 (Ark. 1992) (company that constructed a retaining wall under the observation of the firm that designed the wall came within statute of repose); *Carter v. Hartenstein*, 455 S.W.2d 918, 920 (Ark. 1979) (company that manufactured and installed an elevator in a government building was covered by statute).

Cearley argues that § 16-56-112 does not bar his claims because the statute extends protection only to persons, like architects and contractors, whose work involves "individual expertise not susceptible of the quality control standards of the factory." Cearley asserts that the rewinder is a "mass produced fungible good," and that Bobst NA did not perform "individualized design or construction work" that required "individual expertise." On that basis, Cearley contends that Bobst NA was not a "person performing or furnishing the design, planning, supervision, or observation of construction or the construction and repair" of an improvement to real property. *See* Ark. Code. Ann. § 16-56-112(b)(1).

Cearley relies on *Brown v. Overhead Door Corp.*, 843 F. Supp. 482 (W.D. Ark. 1994), where an automatic garage door opener malfunctioned and injured a child. The district court in *Brown* concluded that the manufacturer of the door opener, a mass-produced fungible good, could not invoke the statute of repose, especially where the manufacturer was "not involved in the installation of the product and had nothing to do with the design of the improvement within which [the product was] installed." *Id*. at 490. The court reasoned that other courts had declined to extend the coverage of similar statutes to "suppliers or materialmen on the grounds that the statute was designed to protect those actors supplying individual expertise under

-5-

circumstances not susceptible of the quality control standards of the factory." *Id.*; *see Norfolk & Dedham Fire Ins. Co. v. Rogers Mfg. Corp.*, 122 F.4th 312 (8th Cir. 2024).

Cearley's argument concerning potential liability of manufacturers is inapposite here, even if a rewinder could be deemed comparable to a garage door opener. Bobst NA did not design or manufacture the rewinder; the machine was manufactured by Bobst Italia. As explained, Bobst NA technicians participated in the delivery, installation, integration, and commissioning of the rewinder on the Searcy plant's lamination line, so the statute applies to the company's work.

Cearley also contends that the rewinder does not constitute an "improvement to real property" under the statute. He maintains that the question for determination is analogous to whether a chattel has become a fixture, and depends primarily on whether the party intended to make the addition permanent. *See Pledger v. Halvorson*, 921 S.W.2d 576, 578 (Ark. 1996).

The Arkansas Supreme Court, however, has declined to import the common-law doctrine of fixtures into the statute of repose. Rather, the court has focused on the purpose for which a piece of machinery was held or employed. In *Cherokee Carpet Mills, Inc. v. Manly Jail Works, Inc.*, 521 S.W.2d 528 (Ark. 1975), the court ruled that a large water tank placed in a carpet manufacturing plant was an improvement to real property because it "was interconnected with other parts of the machinery and equipment" of the plant, and was ever since its installation "a part of the machinery and equipment" of the plant. *Id*. at 530. In *Carter*, a company that installed an elevator came within the scope of parties who made improvements to real property. 455 S.W.2d at 920.

*Cherokee Carpet Mills* and *Carter* did not turn on whether the water tank and elevator, respectively, were intended to be permanent fixtures. Those pieces of equipment, like a rewinder, presumably have a useful life and at some point must be

replaced. But where the machinery is affixed to the real property, furthers the purpose of the realty, and is designed for long-term use in connection with the property, the machinery is an improvement to real property for purposes of the statute of repose.

We therefore conclude that Bobst NA's work installing the rewinder at the Searcy plant constituted the performance or furnishing of the construction of an improvement to real property. Because this action was brought more than four years after the installation of the rewinder, the claims are barred by the statute of repose.

The judgment of the district court is affirmed.

_____